THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SELENE DANIELLE ARRIAGA, | ) |
| *Plaintiff*, | ) |
| v. | ) No. 20 C 4498 |
| THOMAS J. DART, Sheriff of Cook County, Illinois; THE NORTHEAST REGIONAL COMMUTER RAILROAD CORPORATION d/b/a METRA; COOK COUNTY, ILLINOIS; MARIE RANGEL, JOSEPH PEREZ; PAUL RIGGIO; DAVID CAMMACK; THEODORE STAJURA; and TIMOTHY O'DONNELL | ) Judge Virginia M. Kendall |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Selene Arriaga brings suit against Defendants Northeast Regional Commuter Railroad Corporation ("Metra), Cook County, Illinois, and seven other named Defendants, for disclosing her transgender identity during her tenure at the Cook County Sheriff's Police Academy and failing to protect her against ensuing harassment and discrimination. Arriaga claims violations of her Fourteenth Amendment substantive due process and equal protection rights under 42 U.S.C. § 1983 and violations under state law for invasion of privacy, negligence, the Illinois Civil Rights Act, 740 ILCS 23//5(a), and indemnification. Before the Court are Defendants' respective motions to dismiss pursuant to Federal Rule of Civil

1

Procedure 12(b)(6). (Dkt. 15) (Dkt. 30). For the reasons that follow, Defendants' motions are granted in part and denied in part.

## BACKGROUND

The following factual allegations are taken from Arriaga's Complaint (Dkt. 1) and are assumed true for the purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Selene Arriaga is a transgender individual who transitioned from male to female. (*Id.* at ¶ 17). Arriaga's transition required various medical treatments, including hormone therapy and gender confirmation surgeries. (*Id.* at ¶¶ 18; 20). In the spring or summer of 2018, Arriaga secured a job as a police officer at Defendant Metra and enrolled in the Cook County Sheriff's Police Academy ("Police Academy"). (*Id.* at ¶ 15). At the time, Arriaga was still undergoing medical treatments related to her gender transition and was "living in stealth," or "living as a transitioned or transitioning person without disclosing such fact publicly." (*Id.* at ¶ 21).

At or near the time she entered the Police Academy, Defendants conducted an investigation into Arriaga's private medical information and disclosed her identity as a transgender female. (*Id.* at ¶ 25). Defendants failed to take remedial action after disclosing Arriaga's private information. (*Id.* at ¶ 57). Defendants Marie Rangel, David Cammack, Theodore Stajura, and Timothy O'Donnell hold various supervisory roles at the Cook County Sheriff's Office or the Police Academy (collectively, along with Defendants Cook County and Thomas J. Dart, Sheriff of Cook County, the "Cook County Defendants"). Defendants Joseph Perez and Paul Riggio are the Metra Police

Chief and Deputy Chief, respectively (collectively, along with Defendant Metra, the "Metra Defendants").

Prior to the start of the Police Academy, fellow academy recruits also disclosed Arriaga's transgender status to other recruits and a Metra police officer. (*Id.* at ¶¶ 34; 37). Fellow recruits continued disclosing her transgender identity to one another during the Police Academy session and distributed a picture of Arriaga as a male. (*Id.* at ¶¶ 39-40). Arriaga suffered other forms of harassment such as name-calling and gossip along with discrimination. (*Id.* at ¶¶ 41–44). Arriaga claims Defendants failed to adequately supervise recruits and protect her from this harassing and discriminatory behavior. (*Id.* at ¶¶ 25; 41–42; 74; 77).

At some point during her tenure at the Police Academy, Arriaga "reported the Defendants' offensive conduct," but the Complaint does not state when or to whom. (*Id.* at ¶ 45). Arriaga completed the Police Academy on August 27, 2018 and was under the impression that disciplinary action had been taken for the conduct she reported. (*Id.* at ¶¶ 16; 47).

In July 2020, Arriaga learned that her private medical information and transgender identity had been "disclosed to a much larger group of persons and to a much larger extent than she had ever been aware." (*Id.* at ¶ 26). She also discovered that Sheriff Dart concealed the extent of the disclosures and the fact that no one had been disciplined at the Police Academy for the reported conduct. (*Id.* at ¶¶ 46 –47; 97).

On July 31, 2020, Arriaga filed the instant Complaint, claiming under 42 U.S.C. § 1983 that Defendants violated her 14th Amendment substantive due process and equal protection rights by disclosing her private medical information--her transgender status (Counts I and II) and failing to supervise recruits to protect her from harassment and discrimination (Count III). Arriaga also brings claims under state law for invasion of privacy (Count IV), negligence (Count V), violations of the Illinois Civil Rights Act, 740 ILCS 23/5(a) (Count VI), and indemnification (Count VII).

## **LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

**DISCUSSION**

**I.  Section 1983 Claims (Counts I-III)**

Arriaga's § 1983 claims arise from Defendants disclosing her transgender identity in violation of her substantive due process right to medical privacy (Count I) and her equal protection rights (Count II), and failing to adequately supervise recruits and protect her from harassment and discrimination in violation of her substantive due process and equal protection rights (Count III). Counts I through III are brought against all Defendants. Defendants argue these claims should be dismissed on various grounds.

   A.  Personal Involvement

First, the individual Cook County Defendants (Rangel, Cammack, Stajura, O'Donnell) and Metra Police Chief Perez argue that Arriaga inadequately alleges their personal involvement in the constitutional misconduct at issue. A complaint must give a defendant fair notice of the claim against him and the grounds upon which it rests, including the specific act or conduct by the defendant that is challenged. *Twombly*, 550 U.S. at 555; *Black v. Lane*, 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994). Further, § 1983 claims must be premised on personal involvement, not vicarious liability: "[A] plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Beginning with Rangel and Cammack, Arriaga specifically alleges they disclosed her transgender identity to others in 2018 [1] and that the "[Cook County Sheriff's Office] Defendants allow[ed] rank-and-file recruits and other employees to joke, taunt, and embarrass Plaintiff" about her transgender identity "without doing anything to stop such behavior". (Dkt. 1 at ¶¶ 25; 33; 41–42). These statements sufficiently establish Rangel and Cammack's personal involvement. As to Stajura and O'Donnell, while the Complaint includes allegations that they allowed recruits to harass Arriaga without taking action, they are not explicitly alleged to have participated in the disclosures. (*Id.* at ¶¶ 25; 41–42). Similarly, while the Complaint clearly references Perez' participation in disclosing Arriaga's private medical information [2], there is no explicit allegation that he failed to adequately supervise recruits and protect Arriaga. (*Id.* at ¶ 56). In both instances, Arriaga argues that allegations that Defendants, collectively, disclosed her transgender identity and failed to protect her against harassment and discrimination are sufficient to place

---

[1] Defendants argue Rangel and Cammack merely repeated information conveyed to them by other officials or recruits. There is no allegation, however, that academy recruits told any of the Cook County Defendants about Arriaga's transgender identity. The Complaint states the recruits conveyed that information to other recruits and one Metra police officer. (Dkt. 1 at ¶¶34–39). Further, while the Complaint states that in 2018 Defendant Riggio disclosed Arriaga's transgender identity to Rangel and other unnamed officials at the Police Academy, it also states that in 2018, Rangel and Cammack independently disclosed Arriaga's information to other Police Academy staff. (*Id.* at ¶¶31; 33). These allegations do not support an inference that Rangel, Cammack, and the other Cook County Defendants were merely repeating information conveyed by others.

[2] The Complaint states "Metra's Police Chief … disclos[ed] Plaintiff's private medical information to the CCSO Police Academy and repeatedly talk[ed] about it with CCSO Police Academy representatives." (Dkt. 1 at ¶ 56). Contrary to Perez' assertion, the reference to Metra's Police Chief is sufficient to allege Perez' personal involvement in the disclosures because the Complaint earlier identifies Perez as Metra's Police Chief. (*Id.* at ¶ 7).

Stajura, O'Donnell, and Perez on notice of the complained-of conduct and allege their personal involvement. (*Id.* at ¶¶ 51; 74; 77).

Allegations "directed at multiple defendants can be adequate to plead personal involvement" where they "put the defendants on notice of what exactly they might have done to violate [Arriaga]'s rights ... ." *Rivera v. Lake Cty.*, 974 F. Supp. 2d 1179, 1194 (N.D. Ill. 2013); *Brooks v. Ross*, 578 F.3d 574, 582 (7th Cir. 2009). Here, the collective allegation that "Defendants disclosed to others that Plaintiff is transgender," is enough to place Stajura and O'Donnell on notice of the concrete action complained of-- disclosing Arriaga's transgender status. (Dkt. 1 at ¶ 51). By contrast, the allegations that "Defendants failed to protect Plaintiff from the foregoing described sex discrimination, sexual harassment, and hostile work environment" and "fail[ed] to supervise recruits and staff" are conclusory allegations and formulaic recitations of a failure to protect and supervise claim. (*Id.* at ¶¶ 74; 77). They do not place Perez on notice of the concrete actions or omissions upon which Arriaga bases her claim against him. Count III, which is premised on a failure to supervise recruits and protect Arriaga from harassment, is therefore dismissed as to Perez.

B. Qualified Immunity

Next, the Cook County Defendants argue they are entitled to qualified immunity on Arriaga's § 1983 claims because no reasonable officer in their position would have known that disclosing Arriaga's transgender identity was unconstitutional under the circumstances described in the Complaint. Qualified

7

immunity "protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). To overcome a qualified immunity defense, plaintiff's "allegations [must] make out a deprivation of a constitutional right," and "the right at issue [must be] clearly established at the time of the defendant's alleged misconduct." *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925-26 (7th Cir. 2011).

Arriaga's Complaint surmounts both hurdles. Unauthorized disclosure of private medical information by the state without a significant government interest violates the due process clause of the 14th Amendment. *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000). Arriaga plausibly alleges in her Complaint that (1) her transgender identity was something she kept private, (2) Defendants disclosed this information without her permission and without a significant state interest, and (3) disclosure of that private information was tantamount to disclosing medical information because anyone informed of her transgender identity would necessarily know of the prior medical interventions and therapy required for her gender transition. (Dkt. 1 at ¶¶ 18–25; 30). The right to medical privacy was also clearly established in 2018. *Denius*, 209 F.3d at 956 ("[T]his Circuit has outlined a clearly established 'substantial' right in the confidentiality of medical information that can only be overcome by a sufficiently strong state interest.).

8

Defendants argue that while there may be a clearly established right to keep *private* medical information from disclosure, Arriaga's transgender status was public information when they disclosed it to others, such that "no reasonable official would have understood that additional disclosures of Plaintiff's transgender status" would violate her rights (Dkt.42 at 8). The Complaint alleges academy recruits disclosed Arriaga's transgender status to other recruits prior to the start of the Police Academy and that Defendants disclosed the same information at or near the start of the Police Academy (Dkt. 1 at ¶¶ 25; 34; 37). While the recruits' disclosures seem to predate those of Defendants, it is unclear when Arriaga's transgender status became public knowledge. Surely, the fact that a handful of recruits knew about Arriaga's transgender identity at the time Defendants disclosed it cannot shield Defendants, who are state officials, from liability. As support, Defendants cite to *Chasensky v. Walker*, in which the Seventh Circuit concluded that defendants' public broadcast of plaintiff's bankruptcy filing did not violate plaintiff's privacy rights because "all the defendants allegedly did was publicize the already-published fact that Chasensky had filed bankruptcy." 740 F.3d 1088, 1096 (7th Cir. 2014). Unlike the bankruptcy proceedings in *Chasensky*, however, Arriaga's transgender identity was not a matter of public record. The public disclosure of publicly available information is entirely distinct from the public disclosure of private information that happens to be known by a few. At this stage, factual ambiguities regarding the timing, manner, and scope of Defendants' disclosures—all relevant considerations to the qualified immunity calculus— remain to be resolved, making a grant of qualified immunity premature.

9

*See e.g., Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) ("Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.") (internal quotations omitted).

### C. Statute of Limitations

The Cook County Defendants maintain that Arriaga's § 1983 claims are time-barred under the applicable statute of limitations. While Arriaga is not required to anticipate and defeat affirmative defenses such as a statute of limitations in her complaint, if the "complaint nonetheless sts out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). A two-year statute of limitations applies to § 1983 claims in Illinois, beginning from the date "the plaintiff knows or should know that his or her constitutional rights have been violated." *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (internal quotations omitted).

The parties dispute the date on which Arriaga's claims accrued. Defendants maintain that the date of accrual is May 2018, when Arriaga started at the Police Academy because Arriaga alleges that she experienced harassment and discrimination on account of her transgender identity "[f]rom the first day of the CCSO's Police Academy…." (Dkt. 1 at ¶ 44). As a preliminary matter, the Complaint does not indicate that the Police Academy session began in May 2018—it merely states that that program started in the spring/summer of 2018. (*Id*. at ¶ 15). Even if the Court accepts that the Police Academy began in May 2018, this date cannot mark

10

the accrual of Arriaga's § 1983 because while the harassing behavior may have placed Arriaga on notice that her private information had been disclosed, the Complaint does not indicate that she knew the identity of the disclosers at the time. *See Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994) ("Even if [plaintiff] knows that he has been injured, if he does not know who or what inflicted the injury," the claim cannot said to have accrued.).

Arriaga argues that the date of accrual is July 2020 when she learned of the fully extent of Defendants' disclosures. But "[t]he statute of limitations starts to run when the plaintiff discovers his injury and its cause *even if the full extent or severity of the injury is not yet known.*" *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013) (citing *Goodhand*, 40 F.3d at 212) (emphasis added). Arriaga also argues that because Sheriff Dart "took affirmative actions to hide the full extent of the disclosures" and concealed the lack of disciplinary action in response to her complaint, the rules of fraudulent concealment and equitable estoppel apply to extend the statute of limitations to five years from the date of concealment. (Dkt. 1 at ¶¶ 46; 97). But again, that Arriaga did not know of the full extent of the disclosures or lack of remedial action while at the Police Academy is irrelevant. Regardless of Dart's actions, Arriaga alleges she knew that Defendants disclosed her transgender identity and failed to protect her from harassment at some point during her time at the Police Academy because she "reported the Defendants' offensive conduct" prior to leaving the Academy. (*Id.* at ¶ 45). Based on these allegations, the latest the statute of limitations could have started is August 27, 2018 when Arriaga left the Police Academy. Arriaga

11

filed the instant Complaint on July 20, 2020, well within the two-year statute of limitations for § 1983 claims. Thus, Count I through III are not time-barred.

### D. *Monell* Liability

Defendants Metra and Dart [3] contend Arriega fails to allege that a Metra or Cook County policy was the moving force behind her claims under § 1983. To hold a municipality liable under § 1983, "a plaintiff must show the existence of an official policy or other governmental custom that not only causes but is the moving force behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (internal quotations omitted) (citing *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978)). "[U]nconstitutional policies or customs take three forms: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004). Arriaga fails to allege any facts indicating that an official policy, practice, or custom was responsible for her injury. Instead, she claims that Metra Police Chief Perez and Cook County Police Academy Director Rangel are final policymakers for Metra and Cook County, respectively.

---

[3] As Dart is sued in his official capacity as Sheriff of Cook County, Illinois, Arriega's claims against him are treated as claims against Cook County, Illinois, and are, thus, subject to the requirements of *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658 (1978). *Guzman v. Sheahan,* 495 F.3d 852, 859 (7th Cir. 2007).

The Complaint is barren of allegations that Perez and Rangel took part in creating policies at Metra and Cook County or had the authority to do so. To wit, the words "policy" or "policymaker" are altogether absent from the Complaint. Arriaga presents *extrinsic* evidence from Metra's website, indicating that Perez makes employment decisions and sets policies and procedures at Metra, but the Court may not consider such evidence on a motion to dismiss. *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir.2009). The website content is not attached to or referenced in the Complaint and there is no indication that it is central to Arriaga's claims. *See id.* [4] Arriaga also argues that Illinois's Railroad Police Act, 610 ILCS 80/2, gives Metra's Police Chief the final authority regarding employment decisions. The Metra Police Department was created under the Regional Transportation Act, 70 ILCS 3615/1.01 *et. seq.*, however, and not the Railroad Police Act, so the latter's applicability is unclear.

As to Rangel, Arriaga seems to argue that her policymaking authority should be inferred from her position as Director of the Police Academy. (Dkt. 38 at 4-5). Title or position alone are insufficient to create a plausible inference that an individual is a final policymaker. Arriaga must allege facts indicating that by virtue of her position Rangel has the "authority to adopt rules for the conduct of government" which "is final in the special sense that there is no higher authority." *Auriemma v. Rice*, 957

---

[4] Arriaga argues that she may present facts outside the pleading so long as they are consistent with the complaint (Dkt. 21 at n. 2). This is true, however, only *after* "the plaintiff pleads sufficient factual material to state a plausible claim… ." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010). As the Complaint does not contain any allegations regarding Perez' status as a final policymaker, Arriaga may not introduce extrinsic evidence to support that fact. The Court further notes that the website content indicates that Perez made decisions and policies, not that he is a *final* policymaker.

13

F.2d 397, 401 (7th Cir. 1992); *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). She fails to do so. The Complaint does not state a claim for *Monell* liability premised on Perez and Rangel's roles as final policymakers for Metra and Cook County. Counts I through III are thus dismissed as to Defendants Metra and Dart.

    E.  <u>Discriminatory Intent—Counts II and III</u>

The Cook County Defendants argue that Arriaga's equal protection claims (Counts II and III) must be dismissed because Arriaga does not allege Defendants had discriminatory intent. To state a claim for violation of the Equal Protection Clause, Arriaga must allege facts demonstrating that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Arriaga alleges "Defendants conduct was motivated at least in party by discriminatory animus towards transgender persons and Plaintiff's protected status, because they considered Plaintiff unique or a subject of interest, and because no one in Plaintiff's circumstances had ever attended the Police Academy … ." (Dkt. 1 at ¶ 54). That Defendants thought of Arriaga as unique or interesting, however, does not plausibly suggest that their actions had a discriminatory purpose. This is particularly true because apart from stating conclusively that she experienced discrimination, Arriaga fails to state what discriminatory actions Defendants took or what discriminatory

14

effect such actions had. (*Id*. at ¶¶44; 74). For these reasons, Count II is dismissed entirely and the equal protection portion of Count III is also dismissed. [5]

### F. State-Created Danger Exception—Count III

Finally, Defendants maintain that Arriaga's fails to state a due process violation in Count III because the conduct alleged does not shock the conscience. Arriaga claims that the shock the conscience standard does not apply to her due process claims. The parties talk past one another. The "scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). One standard courts have developed to determine whether conduct is protected by the due process clause is whether the government's conduct "shocks the conscience." *Id*. At the same time, Courts have determined that the disclosure of private medical information absent significant government interest violates the due process clause without reference to the shocks-the conscience standard. *Denius*, 209 F.3d at 956; *Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir.1995).

Count III of Arriaga's Complaint is premised, however, on the failure to protect Arriaga from the harassing and discriminatory behavior of recruits and staff, rather than on the disclosure of private medical information. Generally, a "State's failure to protect an individual against private violence [or injury] simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). Exceptions to this general rule are (1) a special relationship between the parties, such as when the state has custody of an individual

---

[5] Although the Metra Defendants did not explicitly raise this argument, the Court elects to dismiss the claims against all Defendants for the purposes of judicial economy.

15

(not invoked by Arriaga) and (2) the state-created danger doctrine. *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019). To impose on Defendants a duty to protect Arriaga under the state-created danger exception she must demonstrate that: (1) Defendants, "by [their] affirmative acts, created or increased a danger to the plaintiff[s]"; (2) Defendants' "failure to protect against the danger caused the plaintiff[s'] injury; and (3) the conduct in question shocks the conscience." *Id.* (internal quotations omitted).

While the shock-the-conscience "standard lacks precise measurement," "[o]nly conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience." *King ex rel. King v. E. St. Louis Sch. Dist.*, 496 F.3d 812, 818-19 (7th Cir. 2007). Mere negligence, or even gross negligence, is insufficient. *McDowell v. Vill. of Lansing*, 763 F.3d 762, 766 (7th Cir. 2014). At the very least, deliberate indifference, meaning "conscious disregard of known or obvious dangers," is required. *Hoeppner*, 939 F.3d at 876; *Armstrong v. Squadrito,* 152 F.3d 564, 577 (7th Cir. 1998).

Arriaga alleges that Defendants launched an investigation into her private medical information and deliberately disclosed that information without legitimate reason.[6] (Dkt. 1 at ¶¶ 25; 30). The facts also lend the plausible inference that Defendants knew of a likelihood that Arriaga would be subject to harassment because she was the first transgender recruit to attend the Police Academy. (*Id.* at ¶ 54). Then, in the face of known harassment, Arriaga alleges that Defendants failed to act to protect her from that harassment. (*Id.* at ¶¶ 45; 74). The conduct alleged rises above

---

[6] Contrary to the Cook County Defendants' assertions, the Court finds that this conduct is sufficient to establish an affirmative act that created a danger that Arriaga would be harassed.

16

negligence and is closer to deliberately indifference. While the shocks-the-conscience standard is incredibly difficult to meet and Arriaga bears a significant burden moving forward, the Court concludes that Arriaga has alleged enough to proceed with her claim at this stage in the proceedings.

## II.   State Law Claims (Counts IV-VI)

In Counts IV through VI, Arriaga alleges several Illinois state law actions premised on the same conduct underlying her § 1983 claims—the disclosure of her transgender status and the failure to supervise recruits and protect her from harassment and discrimination. Counts IV and V allege claims of invasion of privacy and negligence against all individual Defendants, Count VI claims a violation of the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5(a), against Dart and Metra and Count VII is an indemnification claim against Metra and Cook County.

Defendants argue that the state claims are time-barred. The statute of limitations for privacy actions and negligence actions in Illinois is one year. 735 ILCS 5/13-201; 745 ILCS 10/8-101. The statute of limitations under the ICRA is two years. 740 ILCS 23/5(b). As established above, Arriaga's claims accrued on August 27, 2018 and she filed the Complaint on July 31, 2020. Thus, Counts IV and V are time-barred under the applicable statutes of limitation. [7]

While Count VI survives a statute of limitations defense, Defendant Dart argues that Arriaga fails to state a claim under the ICRA. The ICRA prohibits any

---

[7] As Counts IV and V are dismissed on statute of limitations grounds, the Court declines to address Defendants other arguments in support of the dismissal of these claims, including under Federal Rule of Civil Procedure 12(b)(1).

17

unit of State, county, or local government from "exclud[ing] a person from participation in, deny[ing] a person the benefits of, or subject[ing] a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender." 740 ILCS 23/5(a)(1). Arriaga does not allege she was excluded from participating in the Academy or denied a benefit of the Academy but alleges multiple times that she was subject to discrimination at the Academy on account of her transgender identity. (Dkt. 1 at ¶¶ 44; 74; 111). These allegations are conclusory, however, and Arriaga fails to allege the specific conduct by Defendants she claims to have been discriminatory. For this reason, Count VI is dismissed as to Defendant Dart and Metra. [8]

Finally, because Arriaga's federal claims under § 1983 survive against some of the individual Defendants, Arriaga's indemnification claim in Count VII survives.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss [15] [30] are granted in part and denied in part. Counts I is dismissed as to Metra and Dart and sustained as to the remaining Defendants. Count II is dismissed entirely. The equal protection claim within Count III is dismissed as to all Defendants. The due process claim within Count III is dismissed as to Metra, Dart, and Perez, but survives otherwise. Counts IV, V, and VI are dismissed entirely. Count VII survives.

---

[8] *See supra* note 6.

All claims are dismissed without prejudice. Arriaga may amend her Complaint within 21 days from the date of this order if she is able to do so.

Date: January 29, 2021

                                               Hon. Virginia M. Kendall
                                               United States District Judge