**(IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Selene Danielle Arriaga,<br><br>    Plaintiff,<br><br>v.<br><br>Thomas J. Dart, Sheriff of Cook County, Illinois; The Northeast Regional Commuter Railroad Corporation d/b/a Metra; Cook County, Illinois; Marie Rangel, Joseph Perez; Paul Riggio; David Cammack; Theodore Stajura; and Timothy O'Donnell,<br><br>    Defendants. | Case No: 20-cv-4498<br><br>Jury Trial Demanded |

## FIRST AMENDED COMPLAINT

Plaintiff, SELENE DANIELLE ARRIAGA, ("Arriaga" or "Plaintiff") brings this Complaint through her attorneys, CASS T. CASPER, ESQ., GIANNA R. SCATCHELL, ESQ., and DISPARTI LAW GROUP, P.A., against the Defendants, Thomas J. Dart, Sheriff of Cook County (official capacity), Marie Rangel, Joseph Perez, Paul Riggio, David Cammack, Theodore Stajura, Timothy O'Donnell, Metra, and Cook County, Illinois (as indemnitor only), (collectively "Defendants"), and alleges as follows:

### JURISDICTION & VENUE

1. This Court has jurisdiction of the action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1343, and the Due Process and Equal Protection Clauses of the 14th Amendment of the United States Constitution; it also has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

2. This Court has jurisdiction to award attorneys' fees under 42 U.S.C. § 1988.

1

3. Venue is proper under 28 U.S.C. § 1391 because the conduct hereafter alleged to be unlawful was committed within the jurisdiction of the Northern District of Illinois.

## PARTIES

4. Plaintiff, Selene Danielle Arriaga, is a legal adult and resident of Cook County, Illinois. She is employed by Defendant The Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Metra"). Plaintiff was harmed by Defendant in Cook County, Illinois.

5. Defendant Thomas J. Dart ("Dart") is the duly-elected Sheriff of Cook County, Illinois, and a government official. He is sued in his official capacity only.

6. Marie Rangel ("Rangel") is a resident of this judicial district and was at all times acting under color of law as a Director of the Cook County Sheriff's Police Academy. She is sued in her individual capacity.

7. Joseph Perez ("Perez") is a resident of this judicial district and was at all times acting under color of law as a Metra Police Chief. He is sued in his individual capacity.

8. Paul Riggio ("Riggio") is a resident of this judicial district and was at all times acting under color of law as a Metra Police Deputy Chief. He is sued in his individual capacity.

9. Timothy O'Donnell ("O'Donnell") is a resident of this judicial district and was at all times acting under color of law as an inspector for the Cook County Sheriff's Department. He is sued in his individual capacity.

10. Defendant The Northeast Illinois Regional Commuter Railroad Corporation d/b/a Metra ("Metra") is a state actor with a principal place of business at 547 West Jackson Street, Chicago, Illinois. Defendant harmed Plaintiff in Cook County Illinois.

11. Sergeant David Cammack ("Cammack") is a resident of this judicial district and was at all

times acting under color of law as a Cook County Sheriff's Police officer/academy instructor. He is sued in his individual capacity.

12. Defendant Theodore Stajura ("Stajura") is a resident of this judicial district and was at all times acting under color of law as CCSO Deputy Police Chief. He is sued in his individual capacity. Defendant harmed Plaintiff in Cook County Illinois.

13. Cook County, Illinois is a unit of local government and has indemnification responsibilities for misconduct of local governmental units and actors pursuant to § 9-102 of the Local Governmental and Employees Tort Immunity Act (745 ILCS 10/9-102). It is sued in its capacity as indemnitor only.

## FACTUAL ALLEGATIONS

14. The Cook County Sheriff's Police Academy ("CCSO" or "Police Academy") housed at Triton College, accepts recruits from a variety of sponsoring police agencies, including, *inter alia*, Metra and the Villages of LaGrange Park, Bellwood, and Mount Prospect.

15. Metra employed Plaintiff and sent her to the CCSO Police academy in the spring/summer of 2018.

16. Plaintiff graduated from the academy on or about August 27, 2018.

17. The Plaintiff is a member of a protected class, *to wit*, she is a transgender person who has transitioned from male to female.

18. Plaintiff's transition required and involved medical interventions, including, but not limited to, hormone therapy.

19. Plaintiff was diagnosed with a medical condition then known as gender identity disorder (DSM-IV), now known as gender dysphoria (DSM-V).

20. In order to treat her gender dysphoria, the Plaintiff underwent a series of medical

interventions, that included hormone therapy and gender confirmation surgeries.

21. Around the time of Plaintiff's initial employment with Defendant Metra and enrollment at the Police Academy, she was undergoing her medical treatments and was "living in stealth" as a transgender male to female person. "Living in stealth" refers to living as a transitioned or transitioning person without disclosing such fact publicly.

22. To disclose to a third party that the Plaintiff is transgender and was undergoing transitioning would be tantamount, in the Plaintiff's case, to disclosing Plaintiff's private medical conditions and private medical interventions because (1) no one could look or sound like the Plaintiff whose designated sex at birth was male without significant medical interventions, and (2) the combination of surgeries which the Plaintiff had were available only to persons diagnosed with gender identity disorder, now known as gender dysphoria.

23. The Plaintiff has, at all times, sought to keep her transgender status and medical treatments and interventions private.

24. The fact that the Plaintiff is transgender and her related medical treatments and interventions are confidential medical information in her case.

25. Through no fault of the Plaintiff, at or near the time she entered into the Police Academy, Plaintiff was outed as transgender by Defendants, including by Defendants not sufficiently protecting her private medical information and protected status, by Defendants conducting an investigation that revealed Plaintiff's private medical information, by the CCSO Defendants allowing rank-and-file recruits and other employees to joke, taunt, and embarrass Plaintiff about her protected status and corresponding medical conditions, without doing anything to stop such behavior.

26. Plaintiff was at no time aware, despite what occurred at the Academy, of the extent of the

wrongful disclosures of her private transgender status and medical treatments, until she received a subpoena from an attorney in July 2020 and was advised that her private statuses and medical information were being disclosed to a much larger group of persons and to a much larger extent than she had ever been aware.

27. Plaintiff's constitutional deprivation claims raised herein began to accrue on August 27, 2018 when Plaintiff graduated from the Police Academy after having experienced severe and pervasive harassment throughout her Police Academy training – all on account of the fact that her private medical information and transgender status had been disclosed to and among Defendants during the time in which she was enrolled in the Police Academy.

28. During Plaintiff's entire time in the CCSO Academy, she was subjected to a repeated onslaught of jokes, gibes, harassing communications over group chats, and in person inquires about her protected gender status that caused her severe embarrassment as a result of the outing of her private medical information.

29. The Plaintiff, at all times, had a fundamental liberty interest in keeping her transgender status and her confidential medical information private, including, but not limited to, the fact that she was diagnosed with gender dysphoria, and that she went and was undergoing medical procedures which enable her to present unambiguously as a female.

30. At all times relevant, there has never been a significant governmental interest in the disclosure of the Plaintiff's transgender status and confidential medical information to the Plaintiff's co-workers and co-recruits, and the disclosure of said information by Defendants violated the Plaintiff's substantive Due Process rights under the Constitution of the United States.

31. In 2018, Defendant Perez, acting under color of law, without consent, communicated about Plaintiff's private medical information with Defendant Riggio and other CCSO Police Academy administration.

32. In 2018 and 2019 Defendant Riggio, acting under color of law, without consent, informed various persons, to include at least one of the sergeants he supervised, as well as officials of the Cook County Sheriff's office that Plaintiff is transgender, including to Defendant Rangel and top administration officials at the CCSO Police Academy.

33. In making those disclosures, Defendant Riggio disclosed to the Plaintiff's supervisors, co-workers and others, confidential medical information relating to the Plaintiff.

34. In 2018, Defendants Cammack and Rangel also disclosed Plaintiff's transgender status to Cook County Police academy staff among others, and even to police chiefs in municipal police departments.

35. In 2018 before the start of the academy class, but in preparation for the class, recruit Timothy Geroulis disclosed Plaintiff's transgender status to a recruit who went through the academy with Plaintiff.

36. The disclosure included his having written a text message which read in part, words to the effect that: "I hear that you have an interesting class, we have a recruit in there and there is a tranny from Metra… My friend David is going for Metra straight lol."

37. As one example among many examples, one of the texts stated as follows:

6



38. In 2018, before the academy class started, but in preparation for the class, recruit Joshua Klima disclosed Plaintiff's transgender status to another Metra Police officer.

39. In 2018, CCSO Academy recruit Dennis Leonardo disclosed Plaintiff's transgender status

7

to two other recruits, Dylan Chalem ("Chalem") and Rachel Richardson ("Richardson").

40. In 2018, recruit Chalem disclosed Plaintiff's transgender status to recruits Leonardo and Richardson.

41. Richardson, Chalem, and Leonardo then distributed to persons and fellow classmates/recruits a photographic image of Plaintiff when she was male that Richardson had obtained off of Plaintiff's brother's Facebook page and that was many years old. Such conduct, together with the repeated outings of Plaintiff's status all through Plaintiff's time in the academy, including in August 2018, made for a severe and pervasive hostile work environment.

42. Defendants Cammack, Stajura, O'Donnell, Riggio, and Rangel failed to protect Plaintiff from the malicious anti-transgender conduct, and malicious outings of her private medical and transgender status, which included name calling, gossip, and dissemination of the image of Plaintiff when she was a teenager and male.

43. Because Defendants Cammack, Stajura, O'Donnell, Riggio, and Rangel failed to supervise staff and cadets at the police academy, persons at the academy (to include recruits-cadets) routinely engaged in malicious anti-transgender conduct which included, name calling, gossip, and dissemination of the image of Plaintiff when she was a teenager and male.

44. Because Defendants Cammack, Stajura, O'Donnell, Riggio, and Rangel failed to supervise staff and cadets at the police academy, Plaintiff was denied substantive due process protection of the law, *to wit*, protection of her private medical information and resulting harm that the State created.

45. From the first day of the CCSO's Police Academy, Plaintiff, because she is transgender,

was subjected to material adverse employment decisions where her terms and conditions were adversely affected by way of a hostile work environment and disclosure of confidential information.

46. Plaintiff reported the Defendants' offensive conduct, despite that Defendants Dart (in official capacity), Cammack, Rangel, Riggio, Stajura, and O'Donnell already knew of the offensive violative conduct because it was so pervasive, including that Plaintiff had been wrongfully outed as a transgender person by recruits in the Academy as well as by the command staff, and including that her status was being widely talked about.

47. As a final policymaker and the final decision making authority for Metra's police department, Defendant Perez failed to establish an express policy to put Metra administration, such as Defendant Riggio, on notice of penalty for the illegitimate disclosure and dissemination of private medical information concerning CCSO recruits, such as Plaintiff's, which perpetuated the ongoing and continuous practice of private medical information dissemination.

48. As the final decision making authority for Cook County Sheriff's Office Police Academy, Defendant Rangel, failed to establish an express policy to put CCSO Police Academy administration on notice of penalty for the illegitimate disclosure and dissemination of private medical information concerning recruits, such as Plaintiff's, which perpetuated the ongoing and continuous practice of private medical information dissemination.

49. As the final decision making authority for Cook County Sheriff's Office Police Academy, Defendant Rangel, also failed to establish an express policy to put CCSO Police Academy administration on notice of penalty for any failure to supervise CCSO recruits engaged in anti-transgender conduct, which perpetuated the ongoing and continuous harassment that Plaintiff faced while in the Academy.

50. In July 2020, Plaintiff discovered for the first time that Sheriff Dart had been concealing the fact that no one had been disciplined whatsoever during or after her time in the Academy for the severe and pervasive discrimination she suffered, and that only a single Sheriff's Police Officer was sent to the Merit Board for termination who, in fact, had not even engaged in discriminatory conduct towards Plaintiff as demonstrated by tapes of witnesses who actually did not indicate that such Police Officer engaged in any discriminatory conduct toward Plaintiff. That is, the CCSO brought a scapegoat up on charges in order to be able to demonstrate that it did something to prevent discrimination, when, in fact, such officer did not engage in discriminatory actions.

51. CCSO also concealed all evidence that no one had been brought up on disciplinary charges for wrongfully outing Plaintiff and subjecting her to a hostile work environment until it was finally uncovered by Plaintiff in July 2020. Prior to that time, Plaintiff was under the impression that disciplinary charges had been meted out, but none had.

52. Plaintiff only discovered that no corrective action had been taken on her situation by the CCSO until July 2020, and had no reason to know otherwise.

53. So too, at all times relevant, Perez' decisions within employment were not subject to meaningful review within Metra, and were within his grant of authority under the Railroad Police Act. He is and has been, therefore, a final policymaker. *See Fabiano v. City of Palos Hills*, 336 Ill.App.3d 635, 656 (1st Dist. 2003) (concluding that a municipal police chief was final policymaker where ordinance granted him exclusive control over police department); *Eversole v. Steele*, 59 F.3d 710, 715 (7th Cir. 1995) (same).

54. So too, Metra's website makes clear that the Metra Police Department is largely self-governing as to employment matters, including hiring and promotion. *See* https://metrarail.com/node/4406 (accessed October 13, 2020) (*e.g.*, "Perez brought in police

veterans outside Metra and promoted some from within to create a command team with wide and diverse experienced. He updated the police policies and procedures manual and made an electronic versions that can be accessed by officers anywhere.").

55. Metra's Police Department is also instituted pursuant to Illinois' Railroad Police Act, 610 ILCS 80/2, requiring, *inter alia*, the establishment of internal control policies and policies for investigation of employees by police officers, with review authority for internal investigations going to the Illinois State Police – not to the Regional Transportation Authority / Metra. *See* 610 ILCS 80/2(4). That makes the Chief of Police the highest person in the chain-of-command at the Metra Police Department for purposes employee investigations.

### **COUNT I: 42 U.S.C. § 1983 CLAIM FOR DEPRIVATION OF 14TH AMENDMENT SUBSTANTIVE DUE PROCESS FOR DISCLOSURE OF CONFIDENTIAL MEDICAL INFORMATION**
(Plaintiff v. All Defendants)

56. The Plaintiff realleges each foregoing paragraph of this Complaint as if fully restated here.

57. At all times, Plaintiff has had a fundamental liberty interest in keeping her transgender status and medical information private, including, but not limited to, the fact that she has suffered from gender dysphoria, had undergone transitional surgeries and medical treatment, and is a male-to-female transgender individual.

58. Under color of law, all Defendants disclosed to others that Plaintiff is transgender, including by talking to each other about it or informing CCSO police academy staff or recruits about it without any rational basis or compelling interest for so doing.

59. Under color of law, Defendants deprived Plaintiff of substantive due process by wrongfully disclosing her private medical information and transgender status.

60. Under color of law, Defendants subjected Plaintiff to a hostile work environment because of Plaintiff's transgender status as a result of these unauthorized disclosures of Plaintiff's private medical information.

61. Defendants' conduct was motivated at least in part by discriminatory animus towards transgender persons and Plaintiff's protected status, because they considered Plaintiff unique or a subject of interest, and because no one in Plaintiff's circumstances had ever attended the Police Academy and they were treating her like she was a sideshow act.

62. Plaintiff's transgender status and private medical information was not a matter of legitimate concern to Defendants, to Plaintiff's co-workers, or to the public, and at no time was there a significant governmental interest in Defendants' talking about and disclosing Plaintiff's private medical information all throughout her time at the CCSO Police Academy.

63. Likewise, there was no significant governmental interest in Metra's Police Chief and Deputy Chief of Police disclosing Plaintiff's private medical information to the CCSO Police Academy and repeatedly talking about it with CCSO Police Academy representatives.

64. As the final decision making authority for Metra, Defendant Perez failed to establish an express policy to put Metra administration, such as Defendant Riggio, on notice of penalty for the illegitimate disclosure and dissemination of private medical information concerning recruits, such as Plaintiff's, which perpetuated the ongoing and continuous practice of private medical information dissemination.

65. As the final decision making authority for Cook County Sheriff's Office Police Academy, Defendant Rangel, failed to establish an express policy to put CCSO Police Academy administration on notice of penalty for the illegitimate disclosure and dissemination of private

medical information concerning recruits, which perpetuated the ongoing and continuous practice of private medical information dissemination.

66. At no time were Defendants' actions reasonable, nor did Defendants take prompt remedial action to correct the wrongful disclosures of Plaintiff's transgender status and medical information.

67. As a result of the foregoing conduct, Defendants proximately caused Plaintiff harm, injury, and damages.

68. Plaintiff suffered harm to include deprivation of her constitutional rights, pain and suffering; stigma; humiliation; and mental stress.

WHEREFORE, and that there is sought, judgment against Defendant for actual, general, special, compensatory damages in the amount of in excess of $500,000, and further demands judgment against each Defendant for the costs of this action, including reasonable attorneys' fees, and such other relief deemed to be just and equitable.

### COUNT II: 42 U.S.C. § 1983 CLAIM FOR DEPRIVATION OF 14TH AMENDMENT SUBSTANTIVE DUE PROCESS FOR FAILURE TO SUPERVISE AND FAILURE TO PROTECT
(Plaintiff v. All Defendants)

69. The Plaintiff realleges each foregoing paragraph of this Complaint as if fully restated here.

70. Defendants were employers or supervisors of Plaintiff.

71. Under color of law, Defendants deliberately disclosed to others that Plaintiff is transgender.

72. By disclosing Plaintiff's private medical information and transgender status, Defendants deprived Plaintiff of her substantive Due Process protection by engaging in discriminatory conduct that shocked the conscience based on the danger that the Defendants created and increased to Plaintiff.

73. Namely, this deliberate disclosure of Plaintiff's medical information and transgender status posed an obvious and serious danger to Plaintiff such that Plaintiff would be subjected to severe harassment being the first transgender recruit to attend the Police Academy.

74. Defendants were aware of such danger and consciously failed to take reasonable measures to prevent such harassment to Plaintiff after her transgender status was disclosed and recruits began making fun of her and subjecting her to jokes and offensive inquiries.

75. As the final decision making authority for Cook County Sheriff's Office Police Academy, Defendant Rangel, also failed to establish an express policy to put CCSO Police Academy administration on notice of penalty for any failure to supervise CCSO recruits engaged in anti-transgender conduct, which perpetuated the ongoing and continuous harassment that Plaintiff faced while in the Academy.

76. As the final decision making authority for Metra, Defendant Perez failed to establish an express policy to put Metra administration, such as Defendant Riggio, on notice of penalty for the illegitimate disclosure and dissemination of private medical information concerning recruits, such as Plaintiff's, which perpetuated the ongoing and continuous practice of private medical information dissemination.

77. Plaintiff's transgender status and private medical information was not a matter of legitimate concern to Defendants, to Plaintiff's co-workers, or to the public.

78. Defendants proximately caused Plaintiff harm, injury, and damages, including emotional distress, embarrassment, anger, stress, and humiliation.

79. At all times, there was no rational basis or compelling justification for disclosure of Plaintiff's private medical information, transgender status, and for subjecting her to jokes and publication of her private facts among the recruits and staff within the CCSO Police Academy.

80. At no time were Defendants' actions reasonable, nor did Defendants take prompt remedial action to correct the wrongful disclosures of Plaintiff's transgender status and medical information.

81. Plaintiff suffered harm to include deprivation of constitutional rights, pain and suffering, stigma, loss of income, humiliation, and mental stress.

WHEREFORE, and that there is sought, judgment against Defendant for actual, general, special, compensatory damages in the amount of in excess of $500,000, and further demands judgment against each Defendant for the costs of this action, including reasonable attorneys' fees, and such other relief deemed to be just and equitable.

## COUNT III: ILLINOIS CIVIL RIGHTS ACT VIOLATION
(Plaintiff v. Defendants Sheriff and Metra)

82. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

83. The Illinois Civil Rights Act of 2003 provides that "No unit of State, county, or local government in Illinois shall: (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender . . ." 740 ILCS 23/5(a).

84. Such Act provides a private right of action to Plaintiff pursuant to 740 ILCS 23/5(b).

85. At all times, Plaintiff was subjected to rank-and-file recruits' and other CCSO employees' jokes, taunts, harassing communications over group chats, subjection to an investigation that further disclosed her conditions and transgender status, and subjection to in person inquiries about her protected gender status and degradations about Plaintiff's protected gender status and corresponding medical conditions.

86. This conduct had the effect of subjecting Plaintiff to discrimination in the Police Academy's program of training and instruction by making Plaintiff's completion of the training and instruction program miserable and anxiety-ridden due to the transgender discrimination, whereas other recruits did not have a similar experience.

87. Defendants' discriminatory actions, through their agents, were present and continued up through her graduation date from the CCSO Police Academy on or about August 27, 2018.

88. Defendants did not subject non-transgender persons to similar conduct, including wrongfully outing their private gender statuses and medical information, as the Defendants did to Plaintiff.

89. At no time was there a compelling justification or rational basis for Defendants' agents' and employees' outing of Plaintiff's transgender status and private medical information.

90. At all times, Plaintiff was denied equal terms and conditions of employment by Metra and the Sheriff by their agents' conduct in wrongfully outing her transgender status and private medical information relating to her transgender status as alleged in this Complaint and incorporated by reference in this Count.

91. Defendants' conduct caused actual damages to Plaintiff, including emotional distress, mental suffering, sleepless nights, anguish, anger, embarrassment, shame, and humiliation.

WHEREFORE, and that there is sought, judgment against Defendant for actual damages in the amount of in excess of $50,000, and further demands judgment against each Defendant for the costs of this action, including reasonable attorneys' fees and costs, and such other relief deemed to be just and equitable.

## COUNT IV: INDEMNIFICATION
(Plaintiff v. Defendants Cook County, Illinois and Metra)

92. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

93. Illinois statute provides that local public entities such as Cook County and Metra are obligated to assume financial responsibility for the wrongful actions committed by their officials or employees, such as the Sheriff, Metra Police Chief, and all of the individual Defendants named herein, and to pay judgments against such individuals. *See, e.g.,* 745 ILCS §§ 10/2-301, 2-302, 9-102.

WHEREFORE, Plaintiff requests that this Court enter a judgment in her favor and against Defendants, and order that Defendant County assume financial responsibility for the actions and/or omissions committed by the Individual Defendants and make Plaintiff whole in all ways.

## CONCLUSION

For the foregoing reasons, Plaintiff prays that this Honorable Court find in her favor on all Counts herein, and that the Court enter and order the relief sought in this Complaint.

## JURY DEMAND

**Plaintiff hereby makes a demand for a Jury on all Counts.**

DATED: February 22, 2021

Respectfully submitted,

/s/ Cass T. Casper
/s/ Gianna Scatchell
_____

Plaintiff's Attorneys

| | |
|---|---|
| Cass T. Casper, Esq. | Gianna R. Scatchell, Esq. |
| DISPARTI LAW GROUP, P.A. | DISPARTI LAW GROUP, P.A. |
| 121 W. Wacker Drive, Suite 2300 | 121 W. Wacker Drive, Suite 2300 |
| Chicago, Illinois 60601 | Chicago, Illinois 60601 |
| P: (312) 506-5511 ext. 331 | P: (312) 506-5511 ext. 330 |
| F: (312) 846-6363 | F: (312) 846-6363 |
| E: ccasper@dispartilaw.com | E: gia@dispartilaw.com |

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 22, 2021 he served the foregoing First Amended Complaint on counsel for all Defendants via this Court's CM/ECF Filing system, and that such counsels are all registered e-filers.

*/s/ Cass T. Casper*
_____