THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SELENE DANIELLE ARRIAGA, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | No. 20 C 4498 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| THOMAS J. DART, Sheriff of Cook | ) | |
| County, Illinois; THE NORTHEAST | ) | |
| REGIONAL COMMUTER | ) | |
| RAILROAD CORPORATION d/b/a | ) | |
| METRA; COOK COUNTY, | ) | |
| ILLINOIS; MARIE RANGEL, | ) | |
| JOSEPH PEREZ; PAUL RIGGIO; | ) | |
| DAVID CAMMACK; THEODORE | ) | |
| STAJURA; and TIMOTHY | ) | |
| O'DONNELL | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Selene Arriaga brings suit against Defendants Northeast Regional Commuter Railroad Corporation ("Metra"), Cook County, Illinois, and seven other named Defendants for revealing her transgender status and failing to curb the discrimination and harassment that resulted from this disclosure. Arriaga alleges violations of her Fourteenth Amendment substantive due process and equal protection rights under 42 U.S.C. § 1983 for disclosure of medical information and failure to supervise and protect. She further alleges violations under state law for discrimination on the basis of gender, Illinois Civil Rights Act, 740 ILCS 23//5(a), and indemnification. Before the Court are Defendants' respective motions to dismiss

1

Plaintiff's First Amended Complaint (Dkts. 53, 60) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motions to dismiss are granted in part and denied in part.

## BACKGROUND

The following factual allegations are taken from Arriaga's First Amended Complaint (Dkt. 47) and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Selene Arriaga is a male-to-female transgender individual who has been diagnosed with gender dysphoria (DSM-V). (*Id.* at ¶¶ 17; 19). In order to treat this condition, she underwent a series of medical interventions, including hormone therapy and gender confirmation surgeries. (*Id.* at ¶¶ 18; 20). While she was undergoing this treatment, she secured a job as a police officer at Defendant Metra and enrolled in the Cook County Sheriff's Police Academy ("Police Academy"). (*Id.* at ¶ 15). At the time, she was "living in stealth," that is, living as a transitioning person without disclosing that fact publicly. (*Id.* at ¶ 21). At all times leading up to the instant action, Arriaga sought to keep her transgender identity and associated medical treatments private. (*Id.* at ¶¶ 23; 29).

Around the time of her entry into the Police Academy, Defendants disclosed her identity as a transgender woman to Police Academy administrators and staff, her superiors and co-workers, and police chiefs in municipal departments. (*Id.* at ¶¶ 25; 31-2; 34). Defendants Perez and Riggio are the Metra Police Chief and Deputy Chief, respectively (collectively, along with Defendant Metra, the "Metra Defendants"). (*Id.* at ¶¶ 7-8). Defendants Rangel, Cammack, Stajura, and O'Donnell hold various

supervisory roles at the Cook County Sheriff's Office and Police Academy (collectively, along with Defendants Cook County and Thomas J. Dart, Sheriff of Cook County, the "Cook County Defendants"). (*Id.* at ¶¶ 5-6; 9-12). Recruits who went through the Academy with Arriaga also disseminated information about her gender identity among themselves and to another Metra police officer. (*Id.* at ¶¶ 35-6; 38-9; 40). Arriaga was not aware of the full extent of these disclosures until she received a subpoena from an attorney in July 2020, which advised that Defendants had "outed" her to a much larger group of people than she had been aware. (*Id.* at ¶ 26).

The divulgence of Arriaga's status as a transgender woman effectively revealed her history of procedures and her psychiatric condition. (*Id.* at ¶¶ 22; 24). As a natal male, her feminine voice and appearance could only be achieved through gender confirmation surgery and hormone treatments. (*Id.* at ¶ 22). Moreover, these procedures are only available to persons who suffer from gender dysphoria. (*Id.* at ¶¶ 22; 24). Arriaga therefore claims that the Defendants' disclosures were tantamount to revealing her confidential medical history. (*Id.*)

As a result of these disclosures, Arriaga sustained discrimination and harassment by fellow recruits during her tenure at the Police Academy, including jokes, taunting, and inquiries about her procedures and protected status, both in-person and over group chat. (*Id.* at ¶¶ 27-28). For instance, her colleagues distributed a years-old photographic image of her as a male prior to her transition, which they obtained by culling her brother's Facebook page. (*Id.* at ¶ 41). A fellow recruit also referred to her by a transphobic slur. (*Id.* at ¶¶ 35-36). These incidents caused her

significant psychological distress in addition to her pre-existing dysphoric condition. (*Id*. at ¶ 28).

Arriaga reported this offensive conduct to Defendants, who took no remedial action regarding the illegitimate disclosure of her medical information or the gender-based harassment she sustained. (*Id*. at ¶¶ 25; 46-49; 53). The Cook County Defendants in fact concealed the fact that none of the offending parties had been disciplined, allowing Arriaga to believe that her complaint of a hostile work environment had met with redress, though this was not the case. (*Id*. at ¶ 50). Arriaga claims that these failures perpetuated the ongoing and continuous practice of private medical information dissemination and harassment. (*Id*. at ¶¶ 47-49). She continued to be mistreated on account of her gender until she graduated from the Academy on August 27, 2018. (*Id*. at ¶ 27).

On February 22, 2021 Arriaga amended her original filing with the instant First Amended Complaint ("FAC"), claiming that Defendants violated her 14th Amendment substantive due process rights under 42 U.S.C. § 1983 by disclosing her private medical information via her transgender status (Count I) as well as failing to supervise Academy personnel and to protect her from harassment and discrimination (Count II). Arriaga also brings claims under state law for violations of the Illinois Civil Rights Act, 740 ILCS 23/5(a) (Count III) and indemnification (Count IV).

## **LEGAL STANDARD**

When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept

well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

## DISCUSSION

### I. Section 1983 Claims (Counts I-II)

Arriaga's § 1983 claims originate in Defendants' disclosure of her transgender status and attendant medical history in violation of her substantive due process right to medical privacy (Count I) and their failure to supervise CCSO personnel and protect Arriaga from discrimination and harassment in violation of her substantive due process rights (Count II). Counts I and II are brought against all Defendants. Defendants Metra, Dart, Perez, and Riggio assert that the claims against them should be dismissed on various grounds.

To bring a municipal claim under § 1983, a plaintiff must allege that an official government policy, custom, or practice is not merely causal but the "moving force behind [a] deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). *See also Monell v. Department of Social Serv.*, 436 U.S. 658,

692 (1978). "[U]nconstitutional policies or customs take three forms: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004).

Arriaga alleges that Metra Police Chief Perez and Cook County Police Academy Director Rangel are final policymakers for Metra and Cook County, respectively, under state law. (Dkt. 47 at ¶¶ 47, 53). *See Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986). She claims that their failure to establish a policy enforcing CCSO employees' obligation to refrain from divulging recruit medical information and to supervise and protect animated her deprivation of constitutional rights. (Dkt. 47 at ¶¶ 47-8). To demonstrate liability, a plaintiff must show that the defendant policymaker was "deliberately indifferent as to [the] known or obvious consequences" of the harmful policy, custom, or practice—that is, that a reasonable policy-maker would conclude that a deprivation of a federally protected right would result. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002). Arriaga contends that Defendants did or should have known that the ensuing discrimination would result from the absence of a policy to forestall it. (*Id.* at ¶74).

Defendants maintain that Arriaga's *Monell* claims fail as a matter of law on three grounds. First, they argue that Defendants Perez and Rangel are not official policymaking authorities for the Academy, so Arriaga cannot sustain § 1983 claims

against Metra or Cook County[1] on the third prong of the *Chortek* test. Second, they submit that she points not to an express policy but to a lack of policy, which does not trigger *Monell* liability. Third, they argue that her claim must be viewed as a single-incident theory of *Monell* liability, which applies narrowly to an injury that is "a highly predictable consequence" of an alleged policy, which category excludes the conduct she describes. *Connick v. Thompson*, 563 U.S. 51, 63 (2011).

A. Policymaking Authority and Personal Involvement

Defendants' motion rests on the premise that Perez and Rangel are not final policymaking authorities for the Police Academy under state law. This Court dismissed the claims against Perez and Rangel in the previous iteration of Arriaga's complaint because she did not allege sufficient involvement on their parts in crafting Metra and Cook County policy and cited to extrinsic evidence and the Railroad Police Act, rather than the governing Regional Transportation Act, to infer that policymaking authority was vested in Metra Defendants. Arriaga remedies this deficiency in the instant complaint in reference to Perez, though not in reference to Rangel.

Defendant Perez argues that final policymaking authority rests in the hands of Metra's Executive Director under the Regional Transportation Authority Act, 70 ILCS 3615, *et seq.* However, as both the plaintiff and Defendants note, the RTA permits the delegation of policymaking authority. *Pembaur v. City of Cincinnati*, 475

---

[1] Because Dart is sued in his official capacity as Sheriff of Cook County, Illinois, Arriaga's claims against him are treated as claims against Cook County, Illinois, and are, thus, subject to the requirements of *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658 (1978). *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).

U.S. 469, 483-84 (1986). In the instant Complaint, Arriaga cites sufficient evidence to support the position that such authority was delegated to Perez, including revising police policies and procedures and making employment decisions without meaningful oversight. (Dkt. 47 at ¶¶ 53-4.) The instant Complaint also clarifies the relevance of the Railroad Police Act, 610 ILCS 80/2, which vests Metra's Police Department with the authority to establish internal controls and policies addressing allegations of misconduct on the part of police personnel. (*Id.* at ¶¶ 54-5). Accordingly, Arriaga sufficiently pleads that Perez had final policymaking authority as to the issue at hand.

Perez also argues that Arriaga fails to allege sufficient personal involvement on his part in her allegation of constitutional misconduct in Count II. A § 1983 claim must be predicated on personal involvement by the defendant, not vicarious liability, and give sufficient notice of the claim against him and the precise conduct that occasioned it. *Iqbal*, 556 U.S. at 676; *Twombly*, 550 U.S. at 555. As noted in this Court's prior opinion, Arriaga has surmounted the threshold of plausibility in her allegation that Defendant Perez disclosed her medical information in satisfaction of Count I. Arriaga's medical information was (1) private (2) disclosed without permission or a significant motivating government interest and (3) tantamount to a medical disclosure, given her feminine presentation. Accordingly, such disclosures constituted a violation of the due process clause of the 14th Amendment. *Denius v. Dunlap*, 209 F.3d 944, 956 (7th Cir. 2000).

However, this Court dismissed Arriaga's failure to supervise and protect claim

against Perez in her initial Complaint as conclusory and formulaic. The instant Complaint and Reply to Defendants' motion remedy this deficiency by detailing how Perez failed to instate a policy to prevent his subordinate, Defendant Riggio, from discussing Arriaga's transgender identity with Police Academy officials or sanction Riggio once he had done so, exhibiting a deliberate indifference to the known risks of this conduct. (Dkt. 47 at ¶ 76; Dkt. 63 at 5-6). Counts I and II are therefore sustained as to Metra, Perez, and Riggio.

Arriaga, however, fails to plead sufficient facts to impute policymaking authority to Defendant Rangel. She refers to Rangel as "final decision making authority for Cook County Sheriff's Office Police Academy," (Dkt. 47 at ¶¶ 48-9, 65), but does not provide any factual detail to gird this contested claim. As in her original Complaint, Arriaga suggests that that Rangel's policymaking authority should be inferred from her position as Director of the Police Academy. (Dkt. 47 at ¶¶ 4-5). However, mere title or position is insufficient to establish policymaking authority. Arriaga must allege facts indicating that by virtue of her position Rangel has the "authority to adopt rules for the conduct of government" which "is final in the special sense that there is no higher authority." *Auriemma v. Rice*, 957 4. *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir. 2001). She fails to do so. Counts I and II are therefore dismissed as to Cook County.

B. Policy Omissions

Defendant Dart argues that only an express, affirmative policy triggers *Monell* liability and that Arriaga's claim fails because it is predicated on the *absence* of a

policy. While a policy omission does not necessarily reflect a decision to act unconstitutionally, *Monell* liability may still attach under certain circumstances, though more evidence than a single incident is required to establish "what the omission means." *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). When a municipality is on notice of a pattern of unconstitutional practices, it may be held liable on the theory that the "decision not to train certain employees about their legal duty to avoid violating citizens' rights" is tantamount to an official policy of condoning constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Arriaga's complaint to Defendant Dart, to which he exhibited not only deliberate indifference in his failure to respond but also bad faith in his attempt to conceal his unresponsiveness, put the municipality on notice of the violations of her due process rights.

Dart further argues that Arriaga alleges a single-incident theory of liability, which undermines her policy omission claim. However, the facts Arriaga alleges do not comprise a single incident but continual harassment sufficient to establish an empirical pattern of conduct. She alleges being repeatedly outed as a post-operative transgender individual, taunted on account of her transgender status, and called a transphobic slur over a sustained period of several weeks. (Dkt. 47 at ¶¶ 25, 27, 36). Arriaga therefore need not rely on a single-incident theory of *Monell* liability as she alleges multiple incidents throughout the course of her tenure at the Police Academy.

Defendant Dart further argues that the harassment Arriaga endured is not a "highly predictable consequence" of the failure to have preventative policies. To the

contrary, recent data indicates that over half of transgender persons experience workplace discrimination[2] and the frequency of such discrimination has been highly publicized in recent years, as Plaintiff points out. It therefore stands to reason that, regardless of Arriaga's status as the first transgender recruit, it is plausible to allege that Defendant Dart should have been on notice of the prevalence of transgender discrimination and established policies to forestall such conduct or, at the very least, to respond to the conduct she reported. Counts I and II are therefore sustained as to Defendant Dart.

## II.     State Law Claims (Counts III-IV)

### A.    Illinois Civil Rights Act Violation

In Count III, Arriaga alleges a violation of the Illinois Civil Rights Act ("ICRA"), 740 ILCS 23/5(a) against Defendant Dart and Metra Defendants.   The ICRA provides that "No unit of State, county, or local government in Illinois shall: (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's . . . gender or (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their . . . gender." 740 ILCS 23/5(a). Arriaga does not allege that she was excluded from participation in the Academy or denied a benefit of the Academy, but that she was subjected to

---

[2] JAIME GRANT ET AL., NATIONAL CENTER FOR TRANSGENDER EQUALITY, INJUSTICE AT EVERY TURN: A REPORT OF THE NATIONAL TRANSGENDER DISCRIMINATION SURVEY (2011) (indicating that ninety percent of transgender survey respondents reported employment discrimination on the basis of their gender identity). *See also*, Shanna Kattari et al., *Policing Gender Through Housing and Employment Discrimination: Comparison of Discrimination Experiences of Transgender and Cisgender LGBTQ Individuals*, J. Soc'y Soc. Work & Rsch. 7, 3 (Fall 2016). https://doi.org/10.1086/686920 (indicating that fifty percent of transgender participants reported workplace discrimination).

discrimination on account of her transgender identity. (Dkt. 47 at ¶¶ 85-86).

Defendants argue that Arriaga fails to state a claim under the ICRA because she neglects to plead exclusion, privation of benefits, or sufficient factual detail of discrimination by Defendant Dart and Metra Defendants. This argument fails on two grounds. First, Arriaga need not allege violations of the exclusion or privation provisions of the ICRA to state a claim, since she alleges that she was "subject to discrimination." 740 ILCS 23/5(a)(1). Second, Arriaga does plead facts in her Complaint that implicate the Defendants in discrimination against her, drawing a line of causation between their disclosures and the gender-based harassment she details therein. (*Id.* at ¶¶ 85-86.) A Complaint need only "allege[] injuries from the *discriminatory effects* of defendant's actions." *See, e.g., Leslie v. Bd. of Educ.,* 379 F. Supp. 2d 952, 963 (N.D. Ill. 2005) (emphasis added).

Defendants also argue that Arriaga's claim fails because she does not offer sufficient evidence of personal animus on the part of Defendant Dart or Metra Defendants. However, discriminatory intent is not a necessary element of discrimination under the ICRA. *McFadden v. Board of Educ. for Illinois School Dist.,* 984 F.Supp.2d 882 (N.D. Ill. 2013). The Defendants employed "methods of administration that have the effect of subjecting individuals to discrimination," since their failure to address recruit misconduct plausibly had such effects, even if the named Defendants did not themselves engage in harassment. 740 ILCS 23/5(a)(2). The state law is modeled on the federal Title VI, which accommodates claims for discrimination by third parties when Defendants with an obligation to respond to

such conduct exhibit deliberate indifference, as Defendants allegedly did to Arriaga's complaints. *Weiler v. Vill. of Oak Lawn*, 86 F. Supp. 3d 874 (N.D. Ill. 2015) (explaining that Illinois courts look to cases involving violations of federal civil rights statutes to guide its interpretation of the ICRA). Her description of a hostile work environment, if accepted as true, therefore "state[s] a claim to relief that is plausible on its face" under the ICRA. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

     B.  <u>Indemnification</u>

Because Arriaga's ICRA claim and federal claims under § 1983 survive against some of the individual Defendants, Arriaga's indemnification claim against Defendants Metra and Cook County survives (Count IV).

## **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Counts I and II are dismissed as to Defendant Dart but otherwise survive. Counts III and IV survive.

Virginia M. Kendall
United States District Judge

Date: October 23, 2021