**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SELENE DANIELLE ARRIAGA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 20 C 4498 |
| THOMAS J. DART, Sheriff of Cook | ) | |
| County, Illinois, NORTHEAST | ) | Judge Virginia M. Kendall |
| REGIONAL COMMUTER RAILROAD | ) | |
| CORPORATION d/b/a Metra, COOK | ) | |
| COUNTRY, ILLINOIS, MARIE | ) | |
| RANGEL, JOSEPH PEREZ, PAUL | ) | |
| RIGGIO, DAVID CAMMACK, | ) | |
| THEODORE STAJURA, and TIMOTHY | ) | |
| O'DONNELL, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a discovery dispute arising out of Selene Arriaga's lawsuit against her former employer and several individual Defendants, including Defendant Joseph Perez. Arriaga claims Defendants unlawfully disclosed her transgender status, which she alleges she kept private during her employment. Arriaga objected to eleven of Perez's interrogatories on grounds of relevance, proportionality, and invasion of privacy. Arriaga objected to an additional interrogatory as calling for a legal conclusion. Perez moves to compel discovery from Arriaga. (Dkts. 147, 148). For the following reasons, the motion [147, 148] is granted.

## BACKGROUND

Arriaga is a transgender woman who worked for the Northeast Regional Commuter Railroad (Metra) as a police officer. (Dkt. 47 ¶¶ 14–17; Dkt. 86 ¶¶ 14–17). While employed at Metra, Arriaga received training at the Cook County Sheriff's Police Academy (CCSO). (Dkt. 47

1

¶ 15; Dkt. 86 ¶ 15). Arriaga sued Metra, Cook County, Illinois, Joseph Perez, and six other named defendants for revealing her transgender status and failing to prevent the discrimination and harassment that followed. (Dkt. 47). While employed at Metra, Arriaga alleges that she was "living in stealth"—meaning, she was not publicly disclosing her transgender identity. (*Id.* at ¶ 21). Indeed, Arriaga alleges that she "has, at all times, sought to keep her transgender status and medical treatments and interventions private." (Dkt. 47 ¶ 23). Arriaga claims that the individual Defendants disclosed her transgender status "without consent." (*Id.* at ¶¶ 31–34). Perez denies these allegations in his answer to Arriaga's complaint. (Dkt. 86 ¶¶ 23, 31–34).

In Perez's interrogatories 1–10 and 13, he sought descriptions of "the nature of [Arriaga's] relationship with" eleven social media "user[s] with whom [Arriaga] communicated." (Dkt. 147-1 at 1–6). For all eleven social media users, Perez also requested information on "the approximate length of time [Arriaga] knew the user at the time the communication occurred," and "whether [Arriaga] has personal knowledge whether the user was an acquaintance of, or had a personal relationship with, (1) any Cook County Sheriff's Police Academy recruit, or (2) Cook County Sheriff's Office police officer at any time prior to Plaintiff's attendance at the Police Academy." (*Id.*) Arriaga objected to all eleven requests on grounds of proportionality, relevance, and invasion of privacy. (*Id.*) Arriaga asserted that she and the Facebook users have "an expectation of privacy" in their messages and that the users have "no connection to the CCSO Police academy or Sheriff Office." (*Id.*)

In addition, Arriaga refused to respond to Perez's request for admission 46. The request asks Arriaga to admit whether "[t]he provision of Exhibit 24 to the Cook County Sheriff's Office Training Academy served the significant government interest of determining whether Plaintiff should attempt the POWER test pursuant to male or female testing standards." (Dkt. 121-1 at 6,

2

221–22; Dkt. 154 at 7). Responding to Perez's interrogatory 14, asking Arriaga to admit or deny request for admission 46, Arriaga objects that the request "calls for a legal conclusion." (Dkt. 147-1 at 6). Perez now moves to compel responses to his interrogatories. (Dkt. 147).

## DISCUSSION

"[D]istrict courts enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013). Nonprivileged information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the parties' relative access to the relevant information, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). And "relevant" is "construed broadly to encompass any matter that bears on, or that reasonably could lead to [any] other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see also Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 983 (7th Cir. 2021) ("[A]dmissible evidence is only a subset of discoverable information.") (citing Fed. R. Civ. P. 26(b)(1)). "The grounds for objecting to an interrogatory must be stated with specificity." *Moran v. Calumet City*, 54 F.4th 483, 497 n.6 (7th Cir. 2022) (quoting Fed. R. Civ. P. 33(b)(4)).

## I.      Relevance, Proportionality, and Invasion-of-Privacy Objections

In response to Perez's interrogatories 1–10 and 13, requesting information about the social media users with whom Arriaga shared her transgender identity, Arriaga's "boilerplate" objections reflect "poor discovery practice." *See Moran*, 54 F.4th at 497. Despite Arriaga's contentions, the interrogatories request relevant and proportional information. And the nature of Arriaga's claims makes some intrusion into her privacy inevitable.

3

First, the information sought is relevant. Arriaga alleges that she kept her transgender identity private—an allegation that is important to her claim and which Perez seeks to undermine. The extent to which Arriaga shared her transgender status with others is therefore at issue. Further, if Arriaga revealed her transgender identity over social media, and that information spread to coworkers, her claim could lose force. Accordingly, Perez's efforts to learn the identities of the social media users who knew about Arriaga's transgender status—and whether those users might have shared that information with anyone at Arriaga's workplace—could reasonably lead to information that bears on the case. This is sufficient to overcome the low bar of relevance.

Arriaga argues that her claims raise only the issue of whether Defendants disclosed her transgender status to others "without her consent"—not whether Arriaga "has ever, in a private context, told someone else that she is transgender." (Dkt. 154 at 3). Arriaga argues further that her private disclosure of her transgender status cannot support a "valid defense" for Perez. (*Id.*) Even if Arriaga's theory of her case is so limited, the relevance of Perez's interrogatories does not depend on whether Arriaga believes Perez's defense will prevail. Perez's interrogatories easily clear the hurdle of relevance.

Second, Perez's interrogatories are proportional. Arriaga argues that Perez already has enough information to argue that Arriaga "no longer has a privacy interest because she disclosed" her transgender status to the social media users. (Dkt. 154 at 5). Yet, the context Perez seeks surrounding Arriaga's communications could help him identify potential witnesses or develop his defense. The information is not cumulative or duplicative. Nor has Arriaga shown that providing the requested information would be burdensome. Further, the issue of whether Arriaga kept her transgender identity private appears important to the case, and Arriaga has superior access to the requested information.

4

Third, the invasion into Arriaga's privacy is necessary. As explained, the information sought is important to the case. Arriaga does not point to any privilege applicable to her communications. *See, e.g.*, *Gevas v. Wexford Health Sources*, 2021 WL 5795308, at *4 (N.D. Ill. Dec. 7, 2021) (explaining that the plaintiff "seems to be conflating information he considers private with privileged information"); *see also Torgerson v. Siemens Building Tech., Inc.*, 2021 WL 2072151, at *2 (N.D. Ill. May 24, 2021) (rejecting an argument that social media posts were not discoverable due to privacy concerns). Nor does Arriaga contend that Perez seeks the information for any improper purpose. *See Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994). Further, the Court considers its confidentiality order (Dkt. 100) sufficient to protect Arriaga's privacy.

Thus, Arriaga's relevance, proportionality, and privacy objections are overruled. The Court orders Arriaga to amend her answers to Perez's interrogatories 1–10 and 13 accordingly.

## II.     Legal-Conclusion Objection

Federal Rule of Civil Procedure 36(a) allows request for admission of "facts, the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). In defense of her objection that request for admission 46 "calls for a legal conclusion," Arriaga argues that the request "is not merely applying the law to facts, but it *contains* a legal conclusion, that is, 'the significant governmental interest' is a legal conclusion and Plaintiff is unable to admit or deny a proposition that is in itself a legal conclusion." (Dkt. 154 at 7). Of course, requests for pure legal conclusions are improper, *see Abdulqader v. United States*, 596 F. App'x 515, 516 (7th Cir. 2015). But Perez does not call for a pure legal conclusion by requesting that Arriaga admit or deny whether she believes the government has a significant interest in asking the gender of law enforcement recruits for testing purposes. Rather, this request asks Arriaga to apply law to fact, which is proper under Rule 36. Arriaga has cited no case law to support her position. Thus,

5

Arriaga's objection is overruled. The Court orders Arriaga to amend her answer to Perez's interrogatory 14 accordingly.

## **CONCLUSION**

For reasons above, Perez's motion to compel discovery [147, 148] is granted.


Virginia M. Kendall
United States District Judge

Date: February 1, 2023